UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| LINDA J. BOWLER, | ) |
|     Plaintiff | )<br>)<br>) |
| v. | )   2:20-cv-00132-GZS<br>) |
| ANDREW M. SAUL, Commissioner<br>of Social Security, | )<br>)<br>) |
|     Defendant | ) |

**REPORT AND RECOMMENDED DECISION**

On Plaintiff's application for disability insurance benefits under Title II of the Social Security Act, Defendant, the Social Security Administration Commissioner, found that Plaintiff has severe impairments but retains the functional capacity to perform substantial gainful activity. Defendant, therefore, denied Plaintiff's request for disability benefits. Plaintiff filed this action to obtain judicial review of Defendant's final administrative decision pursuant to 42 U.S.C. § 405(g).

Following a review of the record, and after consideration of the parties' arguments, I recommend the Court vacate the administrative decision and remand for further proceedings.

**THE ADMINISTRATIVE FINDINGS**

The Commissioner's final decision is the February 25, 2019, decision of the Administrative Law Judge. (ALJ Decision, ECF No. 11-2.)[1] The ALJ's decision tracks

---

[1] Because the Appeals Council found no reason to review the ALJ's decision (R. 1), Defendant's final decision is the ALJ's decision.

the familiar five-step sequential evaluation process for analyzing social security disability claims, 20 C.F.R. § 404.1520.

The ALJ found that Plaintiff has severe, but non-listing-level impairments consisting of left knee patellar tilt and mild medial joint space degeneration, status post injection. (R. 17.) The ALJ further found that despite her impairments, Plaintiff has the residual functional capacity (RFC) to perform a full range of medium work. (R. 22.)

Based on the RFC finding, the ALJ concluded that Plaintiff can perform past relevant work as a telephone representative and file clerk. (R. 24.) The ALJ determined, therefore, that Plaintiff was not disabled from November 6, 2015, through the date of the ALJ's decision. (R. 25.)

## STANDARD OF REVIEW

A court must affirm the administrative decision provided the decision is based on the correct legal standards and is supported by substantial evidence, even if the record contains evidence capable of supporting an alternative outcome. *Manso-Pizarro v. Sec'y of HHS*, 76 F.3d 15, 16 (1st Cir. 1996) (per curiam); *Rodriguez Pagan v. Sec'y of HHS*, 819 F.2d 1, 3 (1st Cir. 1987). Substantial evidence is evidence that a reasonable mind might accept as adequate to support a finding. *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Sec'y of HHS*, 647 F.2d 218, 222 (1st Cir. 1981). "The ALJ's findings of fact are conclusive when supported by substantial evidence, but they are not conclusive when derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts." *Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999).

## DISCUSSION

Plaintiff argues that (1) the ALJ erroneously failed to find Plaintiff's neurocognitive disorder to be a severe impairment, (2) the ALJ's RFC assessment is not supported by the state agency experts upon whom the ALJ relied because the experts' opinions are based on an incomplete medical record, and (3) the ALJ was not qualified to conclude that the results of Plaintiff's neurocognitive evaluation did not warrant any functional limitations.

### A. Step 2 Assessment

At step 2 of the sequential evaluation process, a social security disability claimant must establish the alleged conditions are severe, but the burden is de minimis, and is designed merely to screen out groundless claims. *McDonald v. Sec'y of HHS*, 795 F.2d 1118, 1123 – 24 (1st Cir. 1986). The ALJ may find that an impairment or combination of impairments is not severe when the medical evidence "establishes only a slight abnormality or combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work even if the individual's age, education, or work experience were specifically considered." *Id.* at 1124 (quoting Social Security Ruling 85–28). In other words, an impairment is severe if it has more than a minimal impact on the claimant's ability to perform basic work activities on a regular and continuing basis. *Id.*

At step 2, medical evidence is required to support a finding of severe impairment. 20 C.F.R. § 404.1521. *See also* Social Security Ruling 96-3p ("Symptoms, such as pain, fatigue, shortness of breath, weakness, or nervousness, will not be found to affect an individual's ability to do basic work activities unless the individual first establishes by objective medical evidence (i.e., signs and laboratory findings) that he or she has a

medically determinable physical or mental impairment(s) and that the impairment(s) could reasonably be expected to produce the alleged symptom(s).") (citation omitted). A diagnosis, standing alone, does not establish that the diagnosed impairment would have more than a minimal impact on the performance of work activity. *Dowell v. Colvin*, No. 2:13-cv-00246-JDL, 2014 WL 3784237, at \*3 (D. Me. July 31, 2014). Moreover, even severe impairments may be rendered non-severe through the ameliorative influence of medication and other forms of treatment. *Parsons v. Astrue*, No. 1:08-cv-218-JAW, 2009 WL 166552, at \*2 n.2, *aff'd*, 2009 WL 361193. In addition, an impairment must meet the 12-month durational requirement in order to be considered "severe." 20 C.F.R, § 404.1509; *Mulero v. Comm'r of Soc. Sec.*, 108 F. App'x 642, 644 (1st Cir. 2004) (to be severe, impairment must satisfy durational requirement).

Plaintiff contends the ALJ erred when he failed to find Plaintiff's neurocognitive disorder to be a severe impairment. The ALJ found that Plaintiff's medically determinable mental impairments of major depressive disorder and anxiety cause no more than mild limitations in any of the four functional areas identified in the disability regulations at 20 C.F.R. Part 404, Subpart P, Appendix 1, and the ALJ did not specifically address Plaintiff's neurocognitive disorder. (R. 18, 20-21.) In support of his conclusion, the ALJ relied upon the assessments of state agency psychologists, Thomas Knox, Ph.D. and David R. Houston, Ph.D., which assessments he found to be persuasive and consistent with the overall record. (R. 20.) Dr. Knox opined that as the result of her mental impairment, Plaintiff had mild limitations in understanding and remembering information, interacting with others, concentration, and adapting or managing oneself. (R. 62.) Dr. Knox determined that

4

Plaintiff's claimed memory deficits were not consistent with examination findings and not supported by the overall record. (*Id*.) Dr. Houston concurred with Dr. Knox's assessment. (R. 73-74.)

The medical record reviewed by Drs. Knox and Houston included a consultative psychological evaluation by Christopher Muncie, Psy.D. (R. 61, 72, 390-94.) Dr. Muncie conducted informal cognitive assessments of Plaintiff which suggested at least average verbal reasoning skills and grossly intact short-term auditory attention, concentration, and working memory. (R. 392.) Dr. Muncie noted, however, that Plaintiff might "wish to pursue neuropsychological testing to investigate her reports of cognitive complaints." (R. 393.)

The medical record reviewed by Drs. Knox and Houston did not include the March 2018 opinion of Plaintiff's primary care physician, Timothy C. Baum, M.D. (R. 413-14.) Dr. Baum opined that Plaintiff "cannot learn and remember new things and struggles with multitasking," and therefore "her ability to function in the work setting is impossible." (R. 414.) Dr. Baum noted that Plaintiff's cognitive status remained unchanged during an exam in June 2018. (R. 417-18.) The ALJ found Dr. Baum's opinion unpersuasive, concluding that it was not supported by the normal mental status examinations and Plaintiff's denial of psychiatric symptoms in the medical record, Plaintiff's failure to seek specialized mental health evaluation or treatment, and Plaintiff's report of intact activities of daily living. (R. 19, 326-56.)

The record reviewed by the state agency psychologists also did not include the results of clinical tests and the evaluation conducted by Carly Rodgers, Ph.D., over several

days in October 2018. (R. 446-54.) Dr. Rodgers administered an IQ test and Plaintiff obtained a full-scale IQ score of 98, which is average.[2] (R. 448.) Plaintiff also performed within the average range on other tests of cognitive abilities and academic achievement.[3] (R. 449-50.) Plaintiff's overall memory was found not to be impaired. (R. 452.) On individual tests within the Neuropsychological Assessment Battery – Memory Module (NAB-Memory), however, several of Plaintiff's scores fell within the below average, mildly impaired, moderately impaired, or severely impaired ranges. (*See* R. 451-52.) Dr. Rodgers noted that Plaintiff's relatively higher performance on tasks that comprise Shape Learning and Daily Living Memory as compared with her performance on List Learning and Story Learning "indicat[es] that her non-verbal memory is stronger than her verbal memory." (R. 454.) "[T]aking into consideration information gained from the clinical interview and current test results," Dr. Rodgers diagnosed Plaintiff with an "Unspecified Neurocognitive Disorder." (*Id*.) The ALJ referenced the results of Dr. Rogers's testing and examination, noting Plaintiff's average IQ score and the overall finding that Plaintiff's memory is not impaired, but he did not discuss Plaintiff's performance on other tasks in the NAB-Memory exam. (R. 19.)

An ALJ can rely on the opinions of state agency experts even where records are generated after and thus not considered as part of the experts' review. *See, e.g., Smith v.*

---

[2] Dr. Rodgers administered the Wechsler Adult Intelligence Scale, Fourth Edition. (R. 448.) The test is composed of several sub-tests. Plaintiff's score on the Processing Speed scale was borderline/average, whereas her scores on the other sub-tests were either average or average/high average. (*Id*.)

[3] Plaintiff took the Woodcock-Johnson III Tests of Cognitive Abilities and Academic Achievement. (R. 449-50.) All her scores within the sub-tests of these assessments were within the average ranges. (*Id*.)

*Berryhill*, No. 1:16-cv-00567-JHR, 2018 WL 1474528, at *6 (D. Me. Mar. 26, 2018). In some cases, however, the subsequent records include findings that generate questions as to whether an ALJ can supportably rely on the opinions of experts who have not considered the records. Here, Dr. Muncie, whom the ALJ found to be persuasive, specifically noted that Plaintiff might want to consider neuropsychological testing to assess Plaintiff's cognitive complaints. Dr. Rogers conducted the tests and concluded that Plaintiff suffered from an "Unspecified Neurocognitive Disorder." The test results, including results that revealed that Plaintiff's "memory was found to be below average, mildly impaired, moderately [impaired], and severely impaired on tasks that comprise List Learning; mildly and moderately impaired on two tasks of Shape Learning; below average on several tasks that comprise Story Learning; and below average on one task that comprises Daily Living Memory," were not available to Drs. Knox and Houston at the time of their assessments. (R. 453-54.) Nevertheless, the ALJ, without an expert assessment, did not discuss Dr. Rogers' diagnosis and determined that the test results did not support a severe impairment finding. (R. 19-20.)

As discussed above, Plaintiff's burden to establish a severe impairment is de minimis. Given that Plaintiff was diagnosed with a neurocognitive disorder, a diagnosis based on testing that revealed mild, moderate, and severe impairment in the performance of certain tasks, and given that the experts upon whom the ALJ relies to support his conclusion that Plaintiff's "medically determinable mental impairments" are not severe did not consider the test results and opinion of Dr. Rogers, the ALJ's determination that the condition is not severe is not supportable. (R. 21.) That is, where the experts' opinions are

based on a "significantly incomplete record," the ALJ's reliance upon those opinions is not supportable. *Alacantara v. Astrue*, 257 Fed. Appx. 333, 334 (1st Cir. 2007).

Remand, however, is only appropriate when the claimant can demonstrate that an omitted impairment imposes an additional restriction beyond those recognized in the Commissioner's RFC finding, and that the additional restriction is material to the ALJ's "not disabled" finding at step 4 or step 5. *Socobasin v. Astrue*, 882 F. Supp. 2d 137, 142 (D. Me. 2012) (citing *Bolduc v. Astrue*, No. 09–CV–220–B–W, 2010 WL 276280, at *4 n. 3 (D. Me. Jan. 19, 2010) ("[A]n error at Step 2 is uniformly considered harmless, and thus not to require remand, unless the plaintiff can demonstrate how the error would necessarily change the outcome of the plaintiff's claim.")). The issue is thus whether the ALJ's RFC determination is supportable.

### B. RFC Assessment

The ALJ determined that Plaintiff could perform the full range of medium work. The ALJ did not impose any mental limitations. Plaintiff maintains the ALJ did not have the expertise to assess the test results.

In general, an ALJ may not substitute his or her judgment for that of an expert, nor translate raw medical data into an RFC assessment. *See, e.g., Nguyen*, 172 F.3d at 35; *Manso-Pizzaro*, 67 F.3d at 16. An ALJ, however, "'will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s)[.]'" *Ryan M. St. P. v. Saul*, No. 2:19-cv-00167, 2020 WL 1672785, at *3 (D. Me. Apr. 6, 2020) (citing 20 C.F.R. § 404.1520c). The question of a claimant's RFC is "among the issues reserved to the commissioner," *Gilson* at *2 (quoting 20 C.F.R. §§ 404.1527(d)(2)), and while an

8

ALJ must consider supportability, consistency, relationship with the claimant, specialization, and other factors in assessing medical opinions, "he or she need only explain his or her consideration of the two 'most important factors[,]' supportability and consistency, and 'may, but [is] not required to, explain how [he or she] considered' the remaining three factors." *Ryan M. St. P.*, 2020 WL 1672785 at *3 (citations omitted).

As the First Circuit has explained, "the ALJ must measure the claimant's capabilities, and 'to make that measurement, an expert's RFC evaluation is ordinarily essential unless the extent of functional loss, and its effect on job performance, would be apparent even to a lay person.'" *Manso-Pizzaro*, 76 F.3d at 17 (quoting *Santiago v. Sec'y of Health & Human Servs.*, 944 F.2d 1, 7 (1st Cir. 1991)); *see also Gordils v. Sec'y of Health & Human Servs.*, 921 F.2d 327, 329 (1st Cir. 1990) (ALJ is not "precluded from rendering common-sense judgments about functional capacity based on medical findings, so long as [she] does not overstep the bounds of a lay person's competence and render a medical judgment.").

Here, without the benefit of an expert opinion, the ALJ assessed Dr. Rogers' test results and not only determined that Plaintiff's cognitive issues were not severe, but also did not include any cognitive limitations in his assessment of Plaintiff's RFC. This Court has noted that where

> the evidence of Plaintiff's mental health condition and the limitations the condition imposes cannot be fairly characterized as minimal, and while the assessment of certain physical limitations might be within a lay person's competence, a person's mental limitations often are not apparent. The limitations attributable to Plaintiff's anxiety and depression cannot reasonably be characterized as within a lay person's expertise.

9

*Donna G. v. Saul*, No. 1:18-cv-00456-DBH, 2019 WL 2648447, *3 (D. Me. June 27, 2019). Determining the impact on Plaintiff's RFC of her below average, mildly impaired, moderately impaired, and severely impaired performance on various modules of the NAB-Memory assessment also "cannot reasonably be characterized as within" the ALJ's expertise. *Id*.

Furthermore, regardless of whether the ALJ's assessment of the test results constitutes a medical judgment, the mere fact that the ALJ did not account for any cognitive limitations warrants remand. That is, because the ALJ could not supportably determine that Plaintiff's cognitive deficits do not constitute a severe impairment, and because the ALJ's RFC assessment did not include any limitations to account for the deficits, the ALJ could not supportably rely on the vocational testimony that was based on the ALJ's RFC. Accordingly, the step 2 error is not harmless.[4]

## CONCLUSION

Based on the foregoing analysis, I recommend the Court vacate the administrative decision and remand the matter for further proceedings.

## NOTICE

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum, within fourteen (14) days of being served with a copy thereof. A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.

---

[4] Because I have determined that remand is warranted, I have not addressed Plaintiff's other arguments.

10

Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.

/s/ John C. Nivison
U.S. Magistrate Judge

Dated this 5th day of March, 2021.